# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3690

_____

United States of America,           *

                 *

           Appellee,      *

                 *     Appeal from the United States

      v.               *     District Court for the

                 *     District of Minnesota.

Ismael Ruiz-Estrada,        *

                 *

           Appellant.     *

_____

Submitted: August 20, 2002

Filed:  November 29, 2002

_____

Before WOLLMAN, RILEY, and MELLOY, Circuit Judges.

_____

RILEY, Circuit Judge.

The government indicted Ismael Ruiz-Estrada (Ruiz-Estrada) on one count of conspiracy to distribute drugs and two counts of aiding and abetting the possession and distribution of drugs.  A jury convicted Ruiz-Estrada on the conspiracy count, but acquitted him on both counts of aiding and abetting.  The district court[1] sentenced Ruiz-Estrada to a mandatory minimum sentence of 120 months. Ruiz-Estrada appeals

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

his conspiracy conviction and challenges the constitutionality of the federal drug statute. We affirm.

## I. BACKGROUND

On January 16, 2001, an undercover police officer purchased several grams of crack cocaine from co-defendant Jose Luis Hernandez-Dominguez (Hernandez-Dominguez). Following the transaction, surveillance officers observed Hernandez-Dominguez drive into and enter a Minneapolis apartment complex. During the next several days, surveillance officers observed Hernandez-Dominguez's vehicle at the apartment complex.

On January 29, 2001, a confidential informant called Hernandez-Dominguez and ordered an ounce of powder cocaine. Following the telephone call, surveillance officers observed Hernandez-Dominguez arrive at the same apartment complex and enter Apartment 317. Shortly thereafter, officers observed Hernandez-Dominguez exit Apartment 317, enter his vehicle and drive away. Before Hernandez-Dominguez reached the delivery location, police initiated a traffic stop. Officers observed Hernandez-Dominguez toss two plastic bags outside his vehicle. Officers retrieved the plastic bags, which contained approximately two ounces of cocaine. Officers arrested Hernandez-Dominguez.

Following the arrest, one police officer secured Apartment 317 while another officer applied for a search warrant. In securing the apartment, police discovered Ruiz-Estrada watching television in the apartment living room. A bilingual officer learned from Hernandez-Dominguez's cousin, Maria Aguilar-Dominguez (Aguilar-Dominguez), who was present in the apartment, that she rented the apartment and lived there with her sister and child. Aguilar-Dominguez also said Hernandez-Dominguez had recently left her apartment. These two statements were used by the officers as additional information to obtain a search warrant.

In executing the search warrant, police discovered large quantities of cocaine and cash and two electronic scales inside the apartment. Drugs and cash were found on top of the refrigerator, inside the freezer, and inside kitchen cabinets and closets. Ruiz-Estrada's wallet was also found inside the apartment. Police arrested Ruiz-Estrada and Aguilar-Dominguez.

After his arrest, Ruiz-Estrada was advised in Spanish of his <u>Miranda</u> rights, and expressed a willingness to talk with police. A Spanish-speaking police officer interviewed Ruiz-Estrada. When the police officer asked Ruiz-Estrada if he knew drugs were in the apartment, he initially denied knowledge. Asked if the drugs belonged to Hernandez-Dominguez, Ruiz-Estrada stated, "No, I didn't tell you it [the drugs] was his. It might be mine, too. I was there, too . . . I was there, well . . . someplace you're supposedly an accomplice, right?" When asked if the drugs were his too, he then explained, "That is, I blame myself . . . supposedly, too. But I'm not exactly saying that it's – I blame myself for being there, I accept my responsibility." When the officer asked Ruiz-Estrada if he was at fault, he replied, "Well, it was my fault too, for not knowing and being there, I blame myself, too."

At trial, Aguilar-Dominguez testified for the government as a reluctant witness. She said that her boyfriend, Ruiz-Estrada, had a key to the apartment, kept clothes there, and often stayed in the apartment along with Hernandez-Dominguez. She testified she understood police discovered drugs inside her apartment, but denied the drugs belonged to her. She initially claimed she did not know to whom the drugs belonged, but later admitted having made a prior statement to police in which she stated the drugs belonged to either Ruiz-Estrada or Hernandez-Dominguez. Aguilar-Dominguez explained that, in December 2000, about a month before the police searched her apartment, she became aware of drugs in her apartment and asked Ruiz-Estrada "why he brought the drugs in." Aguilar-Dominguez added that, in this same conversation, she told Ruiz-Estrada it was best if he left the apartment or she would

leave with her sister and child. Ruiz-Estrada assured her he would remove the drugs from the apartment.

Aguilar-Dominguez also testified that, earlier on the day police searched her apartment, Hernandez-Dominguez arrived at the apartment, and Ruiz-Estrada directed her to go into the bathroom with her child so she would not hear a conversation between Ruiz-Estrada and Hernandez-Dominguez about the "merchandise." Aguilar-Dominguez did not hear Ruiz-Estrada and Hernandez-Dominguez discussing drugs on the day police searched the apartment; however, she admitted she had heard Ruiz-Estrada and Hernandez-Dominguez discuss drugs on earlier occasions.

Ruiz-Estrada and Hernandez-Dominguez were jointly tried. Following a three-day trial, the jury returned guilty verdicts against both defendants on Count I, conspiracy to distribute drugs. The jury acquitted Ruiz-Estrada of Counts IV and V, aiding and abetting possession with intent to distribute drugs.[2] Ruiz-Estrada filed a motion for judgment of acquittal or for a new trial, which the district court denied. The district court sentenced Ruiz-Estrada to the mandatory minimum sentence of 120 months imprisonment.

## II.    DISCUSSION

Ruiz-Estrada raises four issues on appeal. First, he argues the government failed to prove he entered into the charged conspiracy. Second, he contends the district court erred in admitting evidence of his prior conviction for simple possession of cocaine. Third, he claims the district court erred in not suppressing evidence found inside the apartment. Fourth, he attacks the constitutionality of 21 U.S.C. § 841(b)(1)(B).

---

[2] The jury found Hernandez-Dominguez guilty of Counts IV and V.

## A.    Conspiracy Count

Ruiz-Estrada claims the government adduced insufficient evidence to sustain the jury's conspiracy conviction.  We apply a very strict standard of review to an appeal for insufficiency of the evidence.  United States v. Crossland, 301 F.3d 907, 913 (8th Cir. 2002).  We are required to view all the evidence in the light most favorable to support the guilty verdict, giving the government the benefit of all reasonable inferences that can be drawn from the evidence.  We will reverse a conviction only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt.  United States v. Hernandez, 299 F.3d 984, 988 (8th Cir. 2002); United States v. Eide, 297 F.3d 701, 704 (8th Cir. 2002).

In order to convict Ruiz-Estrada of conspiracy to distribute and to possess with intent to distribute drugs, the government must prove beyond a reasonable doubt (1) a conspiracy with an illegal purpose existed; (2) Ruiz-Estrada knew about the conspiracy; and (3) he knowingly became a part of the conspiracy.  Crossland, 301 F.3d at 913.  Ruiz-Estrada argues the government adduced insufficient evidence to prove he either knew about the conspiracy or knowingly became a part of the conspiracy.  Ruiz-Estrada also urges us to apply our reasoning from United States v. Cruz, and reverse his conspiracy conviction based on a lack of forensic or physical evidence proving he lived in the apartment.  See United States v. Cruz, 285 F.3d 692 (8th Cir. 2002).

The evidence adduced in this case is substantially greater than the government's evidence in Cruz.  Ruiz-Estrada had a key to the apartment.  He admitted to police he stayed in the apartment.  Ruiz-Estrada also told police he stayed at his uncle's residence, but he was unable to provide police with his uncle's address.  Police found Ruiz-Estrada's wallet inside the apartment in close proximity to a small quantity of drugs located on the kitchen counter.  Police also discovered packages of cocaine, cash and two electronic scales in commonly used places, which, although not in plain view, would be visible to anyone staying in the apartment.  Furthermore, Ruiz-

Estrada inculpated himself by telling the police the drugs and cash discovered in the apartment "might be" his.

Trial testimony corroborated Ruiz-Estrada's voluntary statements and further implicated him in the conspiracy. Aguilar-Dominguez testified Ruiz-Estrada was her boyfriend, had a key to the apartment, and often stayed there. She stated that several weeks before police searched the apartment, she confronted Ruiz-Estrada about the presence of drugs inside the apartment, and he assured her the drugs would be removed. She also said that, on the day the police searched the apartment, Ruiz-Estrada told her to go in the bathroom so she would not hear his conversation with Hernandez-Dominguez about "merchandise." Aguilar-Dominguez reported that, on different occasions, she heard Ruiz-Estrada and Hernandez-Dominguez discuss drugs inside the apartment.

From this evidence, a jury could draw a reasonable inference Ruiz-Estrada knew of the drug conspiracy and knowingly entered the conspiracy. The fact the jury did not find Ruiz-Estrada guilty of aiding and abetting the possession and distribution of drugs does not invalidate the conspiracy conviction. Juries can, and sometimes do, return inconsistent verdicts. See United States v. Madrid, 224 F.3d 757, 762 (8th Cir. 2000) (the jury acquitted defendant of possession of methamphetamine with intent to distribute, but convicted him of conspiracy to distribute methamphetamine.). Based on the evidence adduced, a reasonable jury could infer Ruiz-Estrada entered into an agreement with Hernandez-Dominguez to stash drugs, drug paraphernalia and drug proceeds inside the apartment. We find the record contains ample evidence to support the conspiracy conviction.

## B.    Prior Drug Conviction

Next, Ruiz-Estrada contends the district court erred in admitting his 1998 conviction for possession of 20 grams of cocaine. We review a district court's ruling on the admissibility of Rule 404(b) evidence for abuse of discretion. United States v. Frazier, 280 F.3d 835, 847 (8th Cir. 2002). "[W]e will reverse only when such

evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Brown, 148 F.3d 1003, 1009 (8th Cir. 1998). To admit evidence of another crime under Rule 404(b), the crime must be (1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) supported by sufficient evidence; and (4) such that its probative value is not outweighed by any prejudicial impact. United States v. Hardy, 224 F.3d 752, 757 (8th Cir. 2000). In balancing the prejudicial effect and probative value under Rule 403, we give great deference to the district court's determination. United States v. Claxton, 276 F.3d 420, 422 (8th Cir. 2002).

Guided by these principles, we conclude Ruiz-Estrada's 1998 conviction for possession of cocaine was relevant to a material issue. At trial, the defense contended Ruiz-Estrada was merely present at the apartment watching television and thus lacked the requisite knowledge of a conspiracy, as well as the requisite intent to enter into an agreement to join a conspiracy to distribute drugs. In advancing this theory, Ruiz-Estrada placed his state of mind at issue. Rule 404(b) evidence is admissible to show knowledge and intent when a defendant places his state of mind at issue. United States v. Jackson, 278 F.3d 769, 771 (8th Cir. 2002), citing United States v. Thomas, 58 F.3d 1318, 1321 (8th Cir. 1995). Ruiz-Estrada's prior drug conviction for simple possession of cocaine was material and relevant to prove both his knowledge of drugs and his intent to commit drug offenses, as well as relevant to rebut his "mere presence" defense. See Jackson, 278 F.3d at 771; United States v. Robinson , 110 F.3d 1320, 1324-25 (8th Cir. 1997).

Ruiz-Estrada's prior drug conviction also satisfies the remaining three Rule 404(b) requirements. The 1998 conviction was reasonably close in time to the drug crimes charged in the superceding indictment. See Jackson, 278 F.3d at 772 (3 year old prior conviction). The government offered sufficient reliable evidence of the 1998 conviction in the form of a certified copy of the criminal complaint and a warrant of commitment. Finally, the prior drug conviction was highly probative of

Ruiz-Estrada's intent to commit drug crimes and therefore passes the Rule 403 balancing test. See United States v. Hill, 249 F.3d 707, 713 (8th Cir. 2001). Accordingly, we conclude the district court did not err in admitting evidence of Ruiz-Estrada's prior drug conviction.

### C.     Evidence in Apartment

Ruiz-Estrada contests the admissibility of the evidence discovered in the apartment. He claims the officers illegally entered the apartment absent exigent circumstances and exploited their presence inside the apartment to obtain information to use in the affidavit filed in support of a search warrant. In reviewing a denial of a motion to suppress, we review the district court's factual findings for clear error and review de novo the district court's application of controlling law to the facts. Crossland, 301 F.3d at 911.

Both arguments advanced by Ruiz-Estrada lack merit. The district court's finding that the officers acted reasonably in securing the apartment while awaiting a search warrant was not clearly erroneous. Based on their surveillance of Hernandez-Dominguez, officers reasonably suspected that he was conducting a narcotics operation out of Apartment 317. Officers secured the apartment to prevent the destruction of a suspected narcotics supply. The act of securing the apartment while awaiting a search warrant comports with the Fourth Amendment. See United States v. Roby, 122 F.3d 1120, 1125 (8th Cir. 1997). Moreover, the affidavit filed in support of the search warrant contains no information indicating the police exploited their presence while securing the apartment. Accordingly, we affirm the district court's denial of the motion to suppress.

### D.     21 U.S.C. § 841(b)(1)(B)

Finally, Ruiz-Estrada argues that 21 U.S.C. § 841(b)(1)(B) violates Apprendi v. New Jersey, 530 U.S. 466 (2000) and is unconstitutional. However, he concedes this Circuit has recently joined its sister circuits in rejecting facial challenges to the

constitutionality of § 841(b).  <u>See</u> <u>United States v. Sprofera</u>, 299 F.3d 725, 728-29 (8th Cir. 2002) (citations omitted).  We adhere to this decision and affirm the sentence.

## III.  CONCLUSION

For the reasons discussed, we affirm the conviction and the sentence of Ismael Ruiz-Estrada.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.