# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4076

_____

United States of America,    *
             *
    Plaintiff - Appellee,  *
             * Appeal from the United States
   v.          * District Court for the
             * District of South Dakota.
Dana Milam,       *
             *
    Defendant - Appellant. *

_____

Submitted:  June 12, 2007
Filed:  July 11, 2007

_____

Before MURPHY, BEAM, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

A jury found Dana Milam guilty of aiding and abetting the possession with intent to distribute of 50 grams or more of methamphetamine. She appeals, arguing that there was insufficient evidence to support the verdict, that the district court[1] abused its discretion in allowing the jury to recess at the end of the first day of deliberations without asking them whether they could reach a verdict, and that her trial counsel was ineffective. We affirm.

_____

[1]The Honorable John B. Jones, United States District Judge for the District of South Dakota.

Dana Milam lived in Los Angeles and according to trial testimony she became a supplier of methamphetamine to Joe Deno, then a resident of South Dakota. Deno, who had lived in Los Angeles for 34 years before going to South Dakota in 1995, took a trip to California in May 2003 to attend his nephew's wedding. Deno, a methamphetamine addict, had previously heard of Milam by her nickname of "Tiger." While in California, Deno talked to some old friends who were also familiar with Tiger and who gave him directions to her house. Deno testified at trial that he wanted to talk with Tiger about buying drugs from her.

When Deno arrived at Milam's residence, he saw Matthew Lang outside. Deno asked Lang, whom he had met in the past, whether Milam could "hook him up." Lang said he didn't know, Deno would have to speak with her himself. Lang then took Deno up to the door and knocked, but there was no answer. Deno asked Lang to let Milam know he would get in touch with her later. Later that night Deno was able to learn Milam's phone number from a friend. He called Milam and then returned to her house where she sold him an eighth of an ounce of methamphetamine. When he used the methamphetamine, he realized it was of a higher quality than what was available to him in South Dakota. He purchased another half ounce of methamphetamine from Milam before returning home.

After Deno's return to South Dakota, he used some of the methamphetamine and sold the rest. He called Milam to purchase more drugs. They arranged for Deno to send cash to Milam's address in a package addressed to Matthew Lang. Rosalio Gonzalez, a postal worker in Los Angeles, testified at trial that he delivered two or three packages to that address during the summer of 2003 and that Milam signed for two of them. According to Deno, Milam mailed the packages of methamphetamine to the post office box of his friend Mark Lohnes. His initial order of methamphetamine was for half an ounce, but the shipments gradually increased to three ounces. Deno testified that during the life of the drug operation, he and Milam arranged for six or seven shipments of methamphetamine. Milam and Deno made

-2-

arrangements by telephone, and the telephone records introduced at trial showed over 60 phone calls between them. Express mail records showed six shipments made to Lohnes from California.

The scheme continued until August 2003. On August 20, an agent of the United States Postal Service intercepted a package of methamphetamine at the post office in Brandon, South Dakota. The package contained 84.1 grams of 99% pure methamphetamine, it was addressed to Mark Lohnes, and the sender was identified as Matt Lang. Lohnes and Deno were later arrested, and they both agreed to cooperate with federal law enforcement officers. Deno explained the drug operation to them, including the source of the drugs. He told them that two phone numbers saved in his cell phone's address book, one listed as "Matt" and the other listed as "Tiger," belonged to his drug dealers. On Deno's cell phone officers found two voicemail messages left by an unidentified female and two left by a male who identified himself as "Matt." One of the messages left by the female stated that "the package is sent," informed Deno that she was not able to locate the package of money he had mailed, and asked Deno to track the package. Gary Harvison, an officer with the Drug Enforcement Agency, testified at trial that the phone number associated with the voicemail messages was the same number which had been saved as "Matt" on Deno's cell phone.

An indictment was issued by the grand jury on August 17, 2005. Count one alleged that Dana Milam had conspired with Matthew Lang and others to possess with the intent to distribute 50 grams or more of methamphetamine. Count two alleged that Milam aided and abetted the possession with intent to distribute of 50 grams or more of methamphetamine. Milam was arrested in December 2005.

Milam's trial took place on August 22, 2006. The jury heard closing arguments and received instructions after 4:00 pm and began its deliberations at approximately 5:15 pm. At 8:10 pm the jury submitted a note to the district court stating that it

would like "to adjourn for the evening and resume deliberations tomorrow morning." The court granted the jury's request. Milam moved for a mistrial, arguing that it was prejudicial to allow the jury to discontinue its deliberations, and the motion was denied. The next morning the jury reconvened at 9:30. It requested a trial transcript at 10:00 am, but because a transcript could not be obtained in a timely fashion the district court told the jury it would have to rely on its recollection of the evidence. At noon the jury submitted another question to the district court, asking how it should proceed if it had reached a unanimous verdict on the aiding and abetting count but could not reach one on the conspiracy count. The district court responded that it should return with its verdict on the aiding and abetting count. The jury returned a verdict of guilty on that count, and the court declared a mistrial on the conspiracy count. On November 28, 2006, the district court[2] sentenced Milam to 20 years imprisonment. Milam now appeals.

Milam first argues that there was insufficient evidence to convict her of aiding and abetting. The only witness who testified about Milam's involvement in the drug dealing scheme was Deno, a methamphetamine addict and convicted felon who had agreed to cooperate with the government in exchange for a reduced sentence. Deno could not tell the jury Milam had actually sent the drugs to South Dakota she argues, for it was Matt Lang's address which was associated with the packages, not hers. The voicemail messages purportedly left by her on Deno's cell phone are insufficient in her view to sustain a guilty verdict. The government responds that Deno's credibility cannot be assailed on appeal, his testimony was corroborated, and that Milam's voicemail messages are evidence of her involvement in the drug scheme.

Because Milam did not move for acquittal at the close of evidence, we review the district court's entry of judgment for plain error. United States v. Londondio, 420

---

[2]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

F.3d 777, 786 (8th Cir. 2005). Plain error exists when (1) there is error (2) which is plain and (3) affects substantial rights, and we should only exercise our discretion to correct such error if it seriously affects the fairness, integrity or public reputation of judicial proceedings. See United States v. Olano, 507 U.S. 725, 732-36 (1993).

We conclude that the district court did not plainly err in allowing the case to go to the jury, for the evidence was sufficient to support the verdict. The 84.1 grams of intercepted methamphetamine were placed into evidence at trial. Deno testified that Milam was involved in the drug distribution, and his testimony was bolstered by that of postal worker Gonzalez and the two voicemail messages. Absent extraordinary circumstances which are not present here, we cannot review Deno's credibility for that was the jury's job. See United States v. Crenshaw, 359 F.3d 977, 988 (8th Cir. 2004). Based on the evidence presented at trial, a reasonable jury could find that Milam knowingly aided and abetted Deno's possession with intent to distribute the methamphetamine.

Milam next argues that the district court abused its discretion by denying her trial counsel's motion for mistrial at the close of the first day of jury deliberations. She maintains that the district court should first have inquired whether the jury was capable of reaching a verdict that day. According to Milam the jury's request for a transcript the next day, followed by a guilty verdict on the aiding and abetting count, demonstrates that it could not clearly recall the evidence and that prejudice resulted.

Milam has cited no legal authority to support her view that the district court is required to ask whether the jury could reach a verdict before adjourning for the day. The discretion which district courts have in determining whether the jury should be allowed to recess is very broad. See, e.g., United States v. Eldred, 588 F.2d 746, 752 (9th Cir. 1978); United States v. Phillips, 540 F.2d 319, 332 (8th Cir. 1976). In light of the relatively late hour and the fact that the jurors had been working since 9:00 am, the district court was entitled to conclude that justice would be better served by

adjournment for the night.  It gave appropriate instructions and sent the jury home after reading its request for an adjournment in order to "resume deliberations" the following day, a request indicating that a verdict had not been reached.  The later jury request for a transcript does not show prejudice, for the jurors were instructed to rely on their own recollections of the evidence and we presume they followed their oaths. See United States v. Harper, 466 F.3d 634, 647 (8th Cir. 2006).  Milam's speculation of prejudice cannot be grounds for reversal.  See United States v. Porcaro, 648 F.2d 753, 755 (1st Cir. 1981) (affirming district court's denial of motion to sequester jury); Eldred, 588 F.2d at 752.  Indeed, it seems just as likely that the lack of a transcript led to the jury's failure to deliver a verdict on the conspiracy count as to a guilty verdict on the aiding and abetting count.  We conclude that the district court did not abuse its discretion by denying the motion for a mistrial.

Finally, Milam argues that her trial counsel was ineffective in failing to call Matt Lang to testify on her behalf.  She contends that because so much of the government's case rested on the testimony of Joe Deno, the failure to call Lang to refute that testimony deprived her of a fair trial.  We agree with the government that this ineffective assistance of counsel claim must be raised in a collateral proceeding under 28 U.S.C. § 2255, "where a better factual record can be developed."  United States v. Lopez, 431 F.3d 313, 318 (8th Cir. 2005) (internal quotation omitted). Because the district court did not have a chance to develop a record on the ineffectiveness issue, it would be premature to address the claim on this direct appeal. United States v. Martin, 274 F.3d 1208, 1210 (8th Cir. 2001).

Accordingly, we affirm the judgment of the district court.

_____