# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-1887
_____

United States of America

*Plaintiff - Appellee*

v.

Geneva Kristina Hudson, also known as Geneva Hudson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern
_____

Submitted: January 14, 2022
Filed: April 25, 2022
[Unpublished]
_____

Before BENTON, SHEPHERD, and STRAS, Circuit Judges.
_____

PER CURIAM.

After a jury convicted Appellant Geneva Kristina Hudson of one count of conspiracy to distribute a controlled substance and two counts of distribution of a

controlled substance, the district court[1] sentenced Hudson to 270 months imprisonment and 5 years supervised release. On appeal, Hudson asserts that the district court erred in refusing to give a jury instruction requested by Hudson and committed procedural error in determining Hudson's United States Sentencing Guidelines (USSG) offense level due to its error in determining the amount of methamphetamine attributable to Hudson. Having jurisdiction under 28 U.S.C. § 1291 and finding no error, we affirm.

Trial testimony revealed that Hudson, along with her co-defendants, Jeffrey Goins, with whom Hudson shared an apartment, Heather Simmons, and Brent Smith, conspired to distribute and possess with the intent to distribute and distributed controlled substances including actual methamphetamine or "ice" in the Iowa City, Iowa area from early 2018 to early 2020. Simmons and Goins testified against Hudson under cooperation provisions of their plea agreements in hopes of receiving reduced sentences. Two other co-conspirators, Robert Rankin and Shannon Mang, also testified for the government. Rankin was also awaiting federal sentencing, and Mang was facing as-of-yet unfiled state drug charges.

Hudson offered a jury instruction, which would have informed the jury of the penalty range under Iowa law for possession with intent to deliver five or more grams of methamphetamine. Hudson asserts that the district court erred in refusing to give the requested instruction, which, she argues, was a proper instruction going towards the issue of the credibility of these cooperating witnesses. We review a district court's "refusal to submit a proffered jury instruction for abuse of discretion." United States v. Heard, 951 F.3d 920, 926 (8th Cir. 2020) (citation omitted). A district court has wide latitude in formulating jury instructions, and we consider them "sufficient 'if they fairly and adequately submitted the issues to the jury.'" Id. (citation omitted).

---

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa, now retired.

While the district court refused to give the instruction offered by Hudson, it did give a jury instruction that included the following language:

> You have heard testimony that some witnesses have entered into plea agreements with the Government. You have also heard evidence that some witnesses hope to receive a reduced sentence on criminal charges pending against them in return for their cooperation with the government in this case. These plea agreements with the government provide that in return for assistance, the government may recommend a less severe sentence, which could be less than the mandatory minimum sentence for the crime with which a defendant is charged.
>
> Further, some witnesses are subject to a mandatory minimum sentence, that is, a sentence that the law provides must be of a certain minimum length. If the prosecutor handling the case believes that they have provided substantial assistance, that prosecutor can file in the court in which the charges are pending against the witness a motion to reduce his or her sentence below the statutory minimum. The judge has no power to reduce a sentence for substantial assistance unless the government, acting through the United States Attorney, files such a motion. If such a motion for reduction of sentence for substantial assistance is filed by the government, then it is up to the judge to decide whether to reduce the sentence at all, and if so, how much to reduce it.
>
> You may give the testimony of these witnesses such weight as you think it deserves. Whether or not their testimony may have been influenced by their hope of receiving a reduced sentence is for you to decide.

R. Doc. 159, at 5.

This instruction language, which mirrors Eighth Circuit Manual of Model Jury Instructions - Criminal, Instruction 405.B (2020), told the jury that it could consider the credibility of witnesses who were cooperating with the government under the terms of a plea agreement or who otherwise hoped to receive a reduced sentence in a pending case in exchange for cooperation with the government in this case. Hudson

-3-

asserts that it was appropriate for the jury to be informed of the penalty range under Iowa law for methamphetamine distribution offenses in order to fully explain the magnitude of the benefits the cooperating witness would potentially receive. After careful review, we conclude that the district court's instruction "adequately and correctly" informed the jury that "a cooperating witness's testimony may be influenced by the possibility of receiving a reduced sentence." United States v. Cruz-Zuniga, 571 F.3d 721, 725 (8th Cir. 2009). Only one of the cooperating witnesses, Mang, testified that she faced possible *state* drug charges, and her testimony does not indicate that she possessed knowledge of the penalty range for such offenses. Accordingly, "[t]he instruction given, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issue of [witness] credibility to the jury." United States v. Baldenegro-Valdez, 703 F.3d 1117, 1124 (8th Cir. 2013).

At sentencing, in determining the USSG base offense level, the district court attributed at least 4.5 kilograms (9.92 pounds) of actual methamphetamine to Hudson. Hudson asserts that "there was not sufficient evidence . . . to support a finding of 4.5 kilos." We disagree. "At sentencing, '[t]he government bears the burden of proving drug quantity by a preponderance of the evidence.' On appeal, '[w]e review [a district court's drug quantity finding] for clear error and reverse only "when the entire record definitely and firmly illustrates that the lower court made a mistake."'" United States v. McArthur, 11 F.4th 655, 659 (8th Cir. 2021) (alterations in original) (citations omitted). When a district court calculates the drug quantity in a drug conspiracy case, it "may consider amounts from drug transactions in which the defendant was not directly involved if those dealings were part of the same course of conduct or scheme." Id. (citation omitted). This same course of conduct or scheme "includes all transactions known or reasonably foreseeable to the defendant that were made in furtherance of the conspiracy." Id. (citation omitted); see also USSG § 1B1.3(a)(1)(B) (defining relevant conduct to include "all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii)

in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity that occurred during the commission of the offense of conviction"). Application note 3(A) to USSG § 1B1.3(a)(1)(B) defines "jointly undertaken criminal activity" as "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy."

The district court heard trial testimony from Hudson's co-conspirators describing their handling of large amounts of actual methamphetamine. For example, Goins described how, during the time of his association with Hudson as methamphetamine distributors, he took delivery for resale of several quantities of "ice" totaling well in excess of 4.5 kilograms. This testimony alone was sufficient to support the district court's calculation of Hudson's base offense level. We thus find no error in the district court's calculation of the amount of actual methamphetamine attributable to Hudson and no error in the calculation of Hudson's base offense level.

Accordingly, the judgment of the district court is affirmed.

_____